## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSÉ A. CARRASCO-RODRÍGUEZ, ET AL.,** | |
| **Plaintiffs** | CIVIL NO. 14-1060 (GAG) |
| **v.** | |
| **SERGIO L. TORRES-TORRES, ET AL.,** | |
| **Defendants.** | |

## <u>OPINION AND ORDER</u>

Plaintiffs José A. Carrasco-Rodríguez, Luis Díaz-Rivera, Anthony Martínez-Matos, Ivelisse Navarro-Rivera, Iris I. Alicea-Guzmán, Ivis W. Negrón-Martínez, Myrna L. Albelo-Albelo, José E. Rosado-Agosto, Joel A. Santiago-García, Celidés Rosado-Santiago, David J. Sánchez-Rivera, Nereida Rivera-Díaz, Eduardo Chévere-Cosme, Suly Moreno-Berríos, Carmen M. Vázquez-Nieves, Betzaida Beltrán-Rodríguez and Delimar Rivera-Resto[1] (collectively "Plaintiffs"), bring this action pursuant to 42 U.S.C. § 1983, alleging violations of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution by Defendants Sergio Torres-Torres, Rosarito Rodríguez-Albino, Ricardo Rodríguez-Díaz, Juan Rodríguez-Barreto, and the Municipality of Corozal (collectively "Defendants"). (Docket No. 7.) Plaintiffs also bring state claims alleging violations of Article II of the Constitution of the Commonwealth of Puerto Rico, §§ 1, 2, 4, 6 and 7; and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. <u>Id.</u>

---

[1] Defendant Frances Marrero-Rodríguez was brought into this case in connection to Plaintiff Delimar Rivera-Resto's allegations. (Docket No. 7.) The Court has dismissed without prejudice all claims and causes of action of Plaintiff Rivera-Resto. (Docket No. 95.) It follows, and Plaintiffs agree, that all claims against co-Defendant Marrero-Rodríguez shall be dismissed. (Docket No. 110 at 2 n. 2.) The Court **GRANTS** summary judgment as to Marrero-Rodríguez's claims.

Civil No. 14-1060 (GAG)

Presently before the Court is Defendants' motion for summary judgment and Plaintiffs' response.  (Docket Nos. 98; 110.)  After reviewing the submissions and the pertinent law, the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.

## I.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).  The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).  The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R.Civ. P. 56(c)(1)(B).  If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Civil No. 14-1060 (GAG)

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences.  Id. at 255.  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.  Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation."  Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

II.     **Plaintiffs' Motion to Deem Admitted All Properly Supported Facts**

As a threshold matter, the Court addresses Plaintiffs' motion at Docket No. 115 asking the Court to deem admitted all facts in Plaintiffs' unopposed statement of additional uncontested facts.  In response to Defendants' motion for summary judgment, Plaintiffs filed an opposition memorandum of law, an opposition to Defendants' statement of uncontested facts, and a statement of additional uncontested material facts.  (Docket Nos. 104, 106, 107-1.)  After a little more than a month, Plaintiffs' filed this motion because Defendants had not responded to Plaintiffs' statement of additional uncontested material facts in clear violation of Local Rule 7(c).  (Docket No. 115.)

Local Rule 56(c) provides that Plaintiffs can include a separate section of additional facts in their opposition to summary judgment.  L.Cv.R. 56(c).  "Facts contained in a . . . opposing statement of material facts . . . shall be deemed admitted unless properly controverted."  L.Cv.R. 56(e).  Defendants are correct in stating that they are under no obligation to file a reply to Plaintiffs' opposition to summary judgment.  However, Local Rule 56(e) is clear: when a party files a statement of facts, whether in support or in opposition to summary judgment, those facts will be deemed admitted unless properly controverted.  Defendants failed to properly controvert

Civil No. 14-1060 (GAG)

Plaintiffs' Statement of Additional Uncontested Material Facts at Docket No. 104.[2]  Parties who ignore any provision of Local Rule 56, "do so at their own peril."  <u>Ruis Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000).  All of Plaintiffs' additional uncontested material facts are deemed admitted, and Plaintiffs' motion at Docket 115 is **GRANTED**.  The Court, of course, will only consider material facts in resolving Defendants' motion for summary judgment.

**III.     Relevant Factual and Procedural Background[3]**

Plaintiffs are a group of former employees of the Municipality of Corozal.  (<u>See</u> <u>generally</u> Docket No. 104.)  Fourteen of them were transitory employees[4], and two of them were career employees.[5]  <u>Id.</u>  Plaintiffs occupied the following positions: Supervisor of the Workers' Brigade, Supervisor of Asphalt Brigade, Office Services Assistant, Programmatic Affairs Officer, Auxiliary Collector, Maintenance Worker, Office Systems Technician, Human Resources Technician, Heavy Motor Vehicle Driver, Assistant Director of Human Resources, and Official Collector.  <u>Id.</u> at 5-33.

All the Plaintiffs have been affiliated to the NPP, and actively campaigned for Defendants' rivals—the NPP.  <u>Id.</u> ¶¶ 54-55, 67-71, 85-90, 99-101, 119-123, 140, 149-150,159-163, 174-175,

---

[2] On June 13, 2016, the Court gave Defendants yet another chance to file a response to Plaintiffs' statement of facts before granting Plaintiffs' motion and deeming admitted all additional uncontested facts.  (Docket No. 119.)  Accordingly, Defendants had until Friday June 17, 2016 at the end of the day to properly controvert Plaintiffs' statement of additional facts.  <u>Id.</u>  Instead of complying with said deadline, Defendants filed a motion for a two-week extension of time.  (Docket No. 120.)  Defendants argued that this task could not be completed in 5 days.  <u>Id.</u>  The Court denied Defendants motion for extension of time reasoning that the Court had already given Defendants ample time to respond, and litigants who ignore deadlines do so at their peril.  (Docket No. 122.)  Defendants then filed a motion for reconsideration re-hashing the same arguments previously made, and the Court denied it.  (Docket Nos. 123; 125.)

[3] The Court also notes that due to Defendants' failure to respond to Plaintiffs' requests for admissions by the time the discovery period closed, all 353 statements were also deemed admitted.  (<u>See</u> Docket No. 84.)

[4] The former transitory employees are Plaintiffs José A. Carrasco-Rodríguez, Luis Díaz-Rivera, Anthony Martínez-Matos, Ivelisse Navarro-Rivera, Iris I. Alicea-Guzmán, Ivis W. Negrón-Martínez, Myrna L. Albelo-Albelo, José E. Rosado-Agosto, Joel A. Santiago-García, Celidés Rosado-Santiago, David J. Sánchez-Rivera, Nereida Rivera-Díaz, Eduardo Chévere-Cosme, Suly Moreno-Berríos.  (Docket No. 104 at 5-30.)

[5] The former career employees are Plaintiffs Carmen Vázquez-Nieves and Betzaida Beltrán-Rodríguez.  <u>Id.</u> at 30-35.

4

Civil No. 14-1060 (GAG)

190-191, 212, 227-229, 247-248, 260-262, 281, 299.  Defendants are all affiliated with the PDP.

Id. ¶¶ 8-9, 17-20, 25, 32, 35.  Plaintiffs provided evidence of a number of different ways in which

Defendant Torres-Torres became aware of Plaintiffs' NPP affiliation.  Id. ¶¶ 4-6, 10, 53-58, 67-77,

85-90, 99-107, 119-123, 133-140, 1501-52, 160-167, 175-178, 191-200, 213-219, 228-231, 248,

249, 260-263, 282, 285, 295-304.  First, during his campaign for mayor of Corozal in 2012,

Defendant Torres-Torres ran into several of the Plaintiffs, who actively campaigned for the NPP,

including Plaintiffs Díaz-Rivera, Navarro-Rivera, Alicea-Guzmán, Albelo-Albelo, Rosado-Agosto,

Santiago-García, Rosado-Santiago, Sánchez-Rivera, Chévere-Cosme, and Beltrán-Rodríguez.  Id.

Additionally, Defendant Torres-Torres visited several polling stations where he saw some of the

Plaintiffs including, Carrasco-Rodríguez, Martínez-Matos, Rivera-Díaz, Moreno-Berrios, Beltrán-

Rodríguez.  Id.  At times, some of the Plaintiffs openly admitted to Defendant Torres-Torres that

they belonged to the NPP, including Plaintiffs Alicea-Guzmán, Negrón-Martínez, and Rosado-

Santiago.  Id.  Lastly, Defendant Torres-Torres knew Plaintiffs, personally, and admitted that he

knew many of them were affiliated with the NPP, including Plaintiff Navarro-Rivera, and

Vázquez-Nieves.  Id.

Defendant Torres-Torres won the election and was elected mayor of Corozal, taking office

on January 15, 2013.  Id. ¶ 11.  Shortly after, and as the nominating authority, Defendant Torres-

Torres selected Defendants Rosarito Rodríguez-Albino, and Juan Rodríguez-Barreto as

Administrator of the Municipality and Director of the Finances Office.  Id. at 2-4.  Then in June 5,

2013, he selected Defendant Ricardo Rodríguez-Díaz as the Director of Human Resources,

replacing Plaintiff Vázquez-Nieves who was the interim director at that point.  Id. at 3.

Plaintiffs allege discriminatory acts by not only Defendant Torres-Torres as the nominating

authority, but also by all three remaining co-Defendants working for him.  (Docket No. 106 at 1-

Civil No. 14-1060 (GAG)

16.)  These alleged discriminatory acts are as follows: (1) Defendant Rodríguez-Albino ordered the drafting of the letters given to all transitory employees notifying them that their appointments would soon expire, and she was involved in the selection of Plaintiff Martínez-Matos' substitute, a PDP supporter; (2) Defendant Rodríguez-Díaz was also involved in the non-renewal of Plaintiffs' term appointments, as he helped to determine whether some of the transitory employees would be fired based on performance, and he shadowed some of the transitory employees to make this determination; and (3) Defendant Rodríguez-Barreto was involved in the non-renewal of Plaintiffs' term appointments, specifically the non-renewal of two transitory employees from the Finances Department, and he failed to review personnel files before making recommendations on who to fire. Id.

    A.  <u>Transitory Employees</u>

All of the transitory employees held term appointments that expired between February and June of 2013.  (Docket No. 104 ¶¶ 43, 63, 82, 96, 111, 127, 146, 156, 171, 182, 206, 224, 244, 257.)  All of the transitory Plaintiffs' appointments were not renewed after Defendant Torres-Torres took office.  Id. ¶¶ 48, 63, 82, 96, 111, 127, 146, 156, 171, 182, 206, 224, 244, 257.  Shortly before the expiration of the transitory employees' term appointments, Defendant Rodríguez-Albino instructed Plaintiff Vázquez-Nieves, the acting Assistant Director of Human Resources at the time, to sign and deliver a letter to all transitory Plaintiffs notifying them their contracts were about to expire.  Id. ¶ 308.

By way of letters, or even personally, some of the Transitory Plaintiffs requested the renewal of their term appointment.  Id. ¶¶ 50, 104-106, 114-118, 130-132, 148, 185-188, 210.  Out of those that requested renewal, Defendant Torres-Torres responded to two.  Defendant Torres-Torres wrote a letter telling Plaintiff Alicea-Guzmán that because of budget considerations her

Civil No. 14-1060 (GAG)

1    appointment could not be renewed.  Id. ¶¶ 115-116.  Defendant Torres-Torres also told Plaintiff

2    Sanchez-Rivera that he would not renew his appointment because he had previously campaigned

3    against Defendant Torres-Torres. Id. ¶ 210.

4         Defendants counter that the non-renewals were based on budgetary concerns because the

5    Municipality had to make adjustments to balance the budget left from the previous administration.

6    Id. ¶¶ 311-333; (see also Docket No. 99 ¶ 21.)  Defendants also presented evidence that the non-

7    renewals were based on performance.  (Docket No. 104 ¶¶ 334-336.)  Defendant Torres-Torres

8    held a meeting and ordered the supervisors for each department to make assessments of the

9    transitory employees, and to give him recommendations on whether to renew their contracts.

10   (Docket No. 99 ¶¶ 22-23.)   Based on these evaluations, he made the determination to let all

11   transitory Plaintiffs' contracts expire.  Id.

12        Plaintiffs counter that Defendants' purported reasons are false.  As to the budgetary

13   concerns, Plaintiffs presented evidence that Defendants ended up replacing all the transitory

14   Plaintiffs with other employees soon after the non-renewals, and most of these new employees

15   were members of Defendant Torres-Torres' party, the PDP.  Id. at 43-60.  A total of 106 people

16   were employed by the municipality.  (Docket Nos. 99 ¶ 20; 106 ¶ 20.)   Additionally, Plaintiffs

17   presented evidence that Defendant Torres-Torres actually authorized salary increases for many of

18   the new transitory employees, and the municipalities' budget for fiscal year 2013-2014 increased

19   by more than $500,000.  (Docket No. 104 ¶¶ 332-33, 385, 394-95, 420-39, 446-47, 460, 468, 476-

20   77, 496-87, 505, 528, 539, 547, 556, 568.)  In regards to allegations of transitory Plaintiffs' job

21   performance, Defendants first responded that any performance evaluation could be found in their

22   individual personnel files, and then later at depositions testified that they performed informal

23   evaluations.  Id. ¶¶ 334-37, 359, 363.  Defendant Torres-Torres does not remember whether those

24

**Civil No. 14-1060 (GAG)**

1    assessments were reduced to writing.  Id. ¶ 336.  For the most part, Defendants could not

2    remember or admitted that they did not review most of the transitory Plaintiffs' personnel files, or

3    reviewed previous evaluations to determine whether to renew their contracts.  Id. ¶¶ 340-369.

4          Plaintiffs additionally presented evidence that Defendant Rodríguez-Díaz said instead of

5    evaluating the personnel files of the transitory employees in the Human Resources department, he

6    sat next to all the transitory employees in his department while they performed their duties, he

7    interviewed these employees, and then recommended to the Mayor that Plaintiffs Rivera-Díaz and

8    Moreno-Berríos' contracts not be renewed.  Id. ¶ 359.  However, both of these Plaintiffs testified

9    they never observed Defendant Rodríguez-Díaz shadowing them at work or evaluating their

10   performance.  Id. ¶¶ 232-33.  Both of these Plaintiffs had exemplary job performance evaluations

11   on file.  Id. ¶¶ 223, 255-56, 370.

12          B.  Career Employees

13         Career Plaintiffs Vázquez-Nieves and Beltrán-Rodríguez also argue they were fired

14   because of their political affiliation.  Defendants maintain that Plaintiff Vázquez-Nieves was fired

15   because while on vacation leave she mistakenly took the only key to a filing cabinet that contained

16   two reports that had to be submitted to the Comptroller of Puerto Rico and the Government Ethics

17   Office.  Id. ¶¶ 575-78.  Defendant Rodríguez-Díaz alleges he attempted to contact Vázquez-Nieves

18   to locate the key but that she did not return his calls.  Id. ¶¶ 596-97.  Defendants aver that because

19   Vázquez-Nieves actions resulted in the omission of information in these financial reports, and she

20   never intended to submit the reports, by default, her conduct is consistent with a severe violation

21   omitting information, which results in termination.  (Docket Nos. 99 ¶ 30; 104 ¶¶ 618-19.)

22          To counter, Plaintiffs presented evidence that there was another set of keys in the HR

23   Department that could open the filing cabinet, and that on June 28, 2013, Defendant Rodríguez-

24

**Civil No. 14-1060 (GAG)**

Díaz was told by an employee that they had found this key.  (Docket No. 104 ¶ 593.)  Instead of using the key to open the filing cabinet, Defendant Rodríguez-Díaz instructed the employee to place the key inside a drawer in Vázquez-Nieves' desk.  Id. ¶ 594.  Nieves-Vázquez maintains that no one attempted to contact her while on vacation and that it was not her responsibility to file said reports, which could have been done by other HR employees that were then available.  Id. ¶¶ 599-604.  While the municipality requested an extension of time to file the report, and was never fined, Vázquez-Nieves was charged with an infraction of omitting information because of the incident, a charge that required termination.  Id. ¶¶ 621-28.

As to Beltrán-Rodríguez, Defendants maintain that she was fired because of an incident that occurred on May 2, 2013, where she entered Defendant Torres-Torres' office without permission in an aggressive manner and raising her voice.  Id. ¶¶ 632-33.  Defendants charged her with (1) Abandonment of Work, (2) Insubordination, and (3) Aggressive Behavior.  (Docket No. 99 ¶ 29.)  Defendant Rodríguez-Barreto claims that Beltrán-Rodríguez came into the office in such an aggressive manner that she almost threw the Mayor's driver to the ground.  Id.  Rodríguez-Barreto scolded her, the police officers attempted to take her out and eventually ordered her to go back to her work area.  Id.  Instead of going back, she went into the Comptroller's Office, where no one is authorized to enter.  Id.  The police eventually removed her from the Comptroller's Office.  Id.

Beltrán-Rodríguez's side of the story is as follows: Plaintiffs Alicea-Guzmán and Negrón-Martínez asked her to accompany them to Defendant Torres-Torres' office to deliver a letter informing him about their availability to continue working for the municipality.  (Docket No. 104 ¶ 639.)  When they arrived at Defendant Torres-Torres' office, he was in a meeting with Defendant Rodríguez-Barreto and various police officers.  Id. ¶ 640-44.  Defendant Rodríguez-Barreto

Civil No. 14-1060 (GAG)

became aggressive, shouted at her to leave, and asked the police officers to escort her out.  Id. Plaintiff Beltrán-Rodríguez went back to her office, and there, she suffered a nervous break-down. Id.  She filed a complaint with the HR office, and the Police Department.  Id. ¶ 645.  She then went to the State Insurance Fund, and had to be partially hospitalized.  Id.

Plaintiff Beltrán-Rodríguez returned to the Municipality on May 30, 2013.  Id. ¶ 646.  On August 30, 2013, Plaintiff Beltrán-Rodríguez was relocated to the Public Transportation Terminal as a Collector.  Id. ¶ 656.  This occurred while the internal administrative hearing took its course. Id.  On September 23, 2013, the examining officer from the administrative hearing recommended that Plaintiff Beltrán-Rodríguez be dismissed.  Id. ¶ 662.  Defendant Rodríguez-Díaz agreed with the suggestion.  Id. ¶ 663.  Based on these findings, Defendant Torres-Torres terminated Plaintiff Beltrán-Rodríguez's employment on October 15, 2013.  Id. ¶ 664.  Her termination letter informed her she was fired due to multiple infractions related to respectful behavior at the office, prohibiting absenteeism, neglecting duties, performing inefficiently, aggressive behavior, provoking altercation, and insubordination, among others.  Id. ¶ 668.  Out of all of these charges, only one— abandonment of service—carries the penalty of discharge on the first offense.  Id. ¶¶ 669-674.

Plaintiff Beltrán-Rodríguez submitted evidence that she had never been charged with any other disciplinary action prior to this incident.  Id. ¶ 675.  Plaintiff contends that her punishment was not proportional to her conduct because the incident did not amount to abandonment of service[6], which is the only charge that carries automatic dismissal on the first offense.  Id. ¶¶ 666-67.  Both Defendant Torres-Torres and Rodríguez-Barreto admitted that Plaintiff Beltrán-Rodríguez never had physical contact with either of them, or tried to hit anyone during the

---

[6] According to the Regulations on Conduct Norms and Procedures Regarding Corrective Measures and Disciplinary Actions for the Employees and Officers of the Municipal Government of Corozal. "Abandonment of Service" is "being absent from work for five (5) working days without authorization from the supervisor or just cause. This includes not returning to work without just cause when a leave ends or the conditions that supported such leave ceased to exist."  Id. ¶ 671 (Article XVI, Section A).

**Civil No. 14-1060 (GAG)**

incident, and that when she was told to return to her work area, she complied.  Id. ¶¶ 648-51.  As a result of the incident, Defendant Rodríguez-Barreto received no disciplinary action.  Id. ¶¶ 640-43. Plaintiff Beltrán-Rodríguez was then replaced by a PDP supporter.  Id. ¶¶ 557, 564.

Defendants allege all due process requirements were complied with in terminating both Vázquez-Nieves and Beltrán-Rodríguez's employments.   As to Vázquez-Nieves, Defendants presented evidence that on August 6, 2013 she was given a notice of intent of termination, which contained a summary of the charges against her, and she was also notified of her right to request an informal administrative hearing within fifteen days.   (Docket Nos. 99 ¶ 27; 106 ¶ 27.)   On September 19, 2013, Defendants held a hearing presided by a hearing officer, which Plaintiff Vázquez-Nieves attended personally and she was represented by an attorney.  Id.  On October 4, 2013, she received a Notification of Destitution based on the hearing officer's report, and she was notified of her right to appeal to the Commission of Public Service.  Id.   As to Plaintiff Beltrán-Rodríguez, she also received a notice of intent of termination, which contained a summary of the charges against her, and she was also notified of her right to request an informal administrative hearing within 15 days.  (Docket Nos. 99 ¶ 28; 106 ¶ 28.)  Defendants held an informal hearing for Plaintiff Beltrán-Rodríguez before a hearing officer, where she was present and represented by an attorney.  Id.  On October 15, 2013, she received a Notification of Destitution based on the hearing officer's report, and she was notified of her right to appeal to the Commission of Public Service. Id.  Plaintiff Beltrán-Rodríguez filed the appeal before the Appellate Commission the next week. Id.

Civil No. 14-1060 (GAG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## IV.   Discussion

   A.   Procedural Due Process

To succeed on a procedural due process claim, a plaintiff must show that he was deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances.  See Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).  "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment."  Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)).  To determine public employees' property rights, the First Circuit requires that the court examine local law and the terms and conditions of the employment. Ruiz-Casillas, 415 F.3d at 134.  Under Puerto Rico law, career employees have a property interest in their continued employment.  Garnier v. Rodríguez, 506 F.3d 22, 27 (1st Cir. 2007) (citing González-de-Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004)).  At a minimum, due process requires that prior to a deprivation of life, liberty, or property the individual being deprived of said interest be given notice and an opportunity for a hearing.  See Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (citing Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 19 (1978)).

In the present case, Plaintiffs Vázquez-Nieves and Rodríguez-Beltrán undoubtedly have a property interest in their position as career employees.  Thus, neither of them could be stripped of such property interest without notice and a hearing.  Defendants have come forth with evidence that Plaintiffs received adequate notification informing them of the charges, and were given the opportunity to confront the charges before a "fair and impartial adjudicator."  (Docket No. 98 at 14.)  Furthermore, both Plaintiffs had attorneys present at the hearings.  Id.  While Plaintiffs do not

Civil No. 14-1060 (GAG)

deny that they were provided with notice and a hearing, they argue their due process rights were violated because the process provided was a "sham," and Defendants had already made up their mind to fire them because of their political affiliation. (Docket No. 110 at 40.).

Plaintiffs that allege the hearing was a sham must prove the hearing officer reached his decision before listening to the testimony and did not take into account the evidence presented. See Acosta-Sepúlveda v. Hernández-Purcell, 889 F.2d 9, 12 (1st Cir.1989) (holding recommendation of hearing examiner valid when not arbitrary and capricious in nature and when no evidence demonstrates the result was pre-ordained); see also López-Anaya v. Palacios-de-Miranda, CIV. 06-2085, 2007 WL 2254501, at *2 (D.P.R. Aug. 6, 2007).  "The hearing must be more than a mere sham; if plaintiff can prove that the decision makers reached their conclusion prior to the hearing and refused to consider the evidence then due process would not be satisfied." Id. at *2.

Plaintiffs here have simply failed to come forth with any evidence that the hearing examiner had already made up his mind to terminate both Plaintiffs prior to the hearings. Allegations of false disciplinary charges, while relevant to other claims in this case, are not sufficient to show that the hearing's results were pre-ordained.  Both Plaintiffs appeared at the hearing with their respective lawyer who was able to present evidence and refute Defendants' evidence on their behalf, specifically as to these allegations of false disciplinary charges.  This is far more than due process requires.

Accordingly, the court **GRANTS** Defendants' motion for summary judgment in regards to Plaintiffs' claims under the Due Process Clause of the Fourteenth Amendment.

Civil No. 14-1060 (GAG)

B. <u>Political Discrimination</u>

Next, Defendants move for summary judgment on Plaintiffs' political discrimination claim, specifically asserting Plaintiffs have failed to prove that their political affiliation was a substantial or motivating factor for the dismissals. (Docket No. 98 at 16-26.)

The First Amendment to the United States Constitution embodies the right to be free from political discrimination. <u>Barry v. Moran</u>, 661 F.3d 696, 699 (1st Cir. 2011). The First Circuit has held such right prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted).

1. <u>Plaintiff's Prima Facie Case</u>[7]

A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." <u>Lamboy-Ortiz v. Ortiz-Vélez</u>, 630 F.3d 228, 239 (1st Cir. 2010). The Plaintiffs "must point 'to evidence on the record which, if credited, would permit a rational fact-finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'" <u>González-De-Blasini v. Family Dept.</u>, 377 F.3d 81, 85 (1st Cir. 2004) (quoting <u>LaRou</u>

---

[7] The Court will analyze both the claims of transitory employees and career employees together given that their first amendment political discrimination claims are similar. Transitory employees do not have a due process interest in their employment beyond the duration of their term or appointment. <u>Caro v. Aponte-Roque</u>, 878 F.2d 1, 4-5 (1st Cir. 1989). Yet, non-policymaking public employees cannot be dismissed because of their political affiliation, regardless of the transitory nature of the position. <u>See</u> <u>Padilla-García v. Guillermo Rodríguez</u>, 212 F.3d 69 (1st Cir. 2000); <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92, 94 n. 3, 98 (1st Cir. 1997). "A municipality may not allow transitory employees' contracts to expire if the primary motive is to punish them for their political affiliation." <u>Nieves-Villanueva</u>, 133 F.3d at 98.

14

Civil No. 14-1060 (GAG)

v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)).  Additionally, the plaintiff "must make a fact-specific

showing that a causal connection exists between the adverse treatment and the plaintiff's political

affiliation."  Aviles-Martínez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (citing Correa-Martínez v.

Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)).

If the plaintiff proves his *prima facie* case, the burden shifts to the defendant to articulate a

non-discriminatory ground for the adverse employment action and establish, by a preponderance of

the evidence, that the same action would have been taken regardless of the plaintiff's political

beliefs – also known as the Mt. Healthy Defense.  Mt. Healthy City School Dist. Bd. of Educ. v.

Doyle, 429 U.S. 274, 287 (1977). In response, "the plaintiff may discredit the proffered

nondiscriminatory reason, either circumstantially or directly, by adducing evidence that

discrimination was more likely than not a motivating factor."  Padilla-García v. Guillermo

Rodríguez, 212 F.3d 69, 77 (1st Cir. 2000).

At issue in this motion for summary judgment, is whether Plaintiffs have proffered enough

evidence to satisfy prong four of their *prima facie* case, and show that political affiliation was a

substantial or motivating factor for the adverse employment action.[8] Lamboy-Ortiz, 630 F.3d at

239.  The causation prong is often described as a showing of discriminatory animus. The First

Circuit has recognized that "it is rare that a 'smoking gun' will be found in a political

discrimination case, and thus circumstantial evidence alone may support a finding of political

discrimination."  Id. at 240.  A court can find political affiliation as a substantial or motivating

factor for an adverse employment action by drawing inferences from the context of a multitude of

---

[8] While not clear at times in their motion, Defendants only seem to be challenging this prong of Plaintiffs' *prima facie* case.  Nevertheless, the Court need not address the first two prongs at length, since multiple facts presented by Plaintiff show that Plaintiffs and Defendants were of opposite political affiliations, and that Defendants had knowledge of this fact.  (See Docket No. 104 ¶¶ 50, 53-58, 67-77, 85-90, 99-107, 114-18, 119-23, 130-40, 148 150-52, 160-67, 175-78, 185-88, 191-200, 210, 213-19, 228-31, 248-49, 260-63, 282-85, 295-304.)

**Civil No. 14-1060 (GAG)**

facts at the summary judgment stage.  See Rodríguez v. Mun. of San Juan, 659 F.3d 168, 178 (1st Cir. 2011).

Plaintiffs have provided the Court with sufficient evidence that present multiple issues of material facts as to whether Plaintiffs' political affiliation is a substantial or motivating factor for the non-renewal and firing of Plaintiffs.  First, the timing helps Plaintiffs' claims because their appointments were not renewed soon after Defendant Torres-Torres took office in January 2013. For the most part, Plaintiffs presented enough evidence that Defendants failed to seriously consider all transitory employees' job performance and evaluations before making this decision. Additionally, Plaintiffs presented evidence that they were substituted by members of the PDP. Plaintiffs presented evidence that calls into question the reasons as to why Defendants decided to let go all transitory employees and fire the career employees, raising issues of fact as to whether political discriminatory animus played a part in the decision.  Lastly, at least one transitory employee, Plaintiff Sánchez-Rivera testified of direct discriminatory evidence, stating that Defendant Torres-Torres told him that because he had campaigned against and disrespected him, Plaintiff Sánchez-Rivera was not re-hired.

On this mostly uncontested record, a reasonable jury, drawing inferences favorable to Plaintiffs and making credibility determinations in their favor, could conclude that Defendants acted out of discriminatory animus, and that Plaintiffs' NPP affiliation was a substantial or motivating factor for the adverse employment action.  Consequently, the Court finds that Plaintiffs have proffered sufficient *prima facie* evidence of political discrimination.

2. Mt. Healthy Defense

Accordingly, the burden shifts to the Defendants to provide a non-discriminatory reason for the alleged adverse employment actions.   Under the Mt. Healthy defense, Defendants must

**Civil No. 14-1060 (GAG)**

articulate nondiscriminatory grounds for the adverse employment action and establish, by a preponderance of the evidence, the same action would have been taken regardless of the plaintiff's political beliefs. <u>Mt. Healthy</u>, 429 U.S. at 287.

First, Defendants contend that transitory employees were replaced by members of all political parties, showing that there was no discriminatory animus.  Defendants also aver the decision for the non-renewals specifically was mostly based on budgetary considerations given that the Municipality inherited a shaky budget from the previous administration, and had to make such decisions to balance out the budget.  Eventually, they improved the Municipality's economic situation, and that allowed for expenditures in payroll.  In line with cutting excess expenditure, Defendants decided to consider performance as the determinative factor when choosing which contracts to renew.  The Mayor held a meeting and instructed all supervisors to make evaluations of their respective divisions assessing transitory employees' performance. As to the career employees, Defendants provided evidence of both employees being charged with serious disciplinary actions that ultimately caused their dismissal in accordance with the Municipality's regulations.  Thus, Defendants have met their burden to establish non-discriminatory reasons.

3. <u>Pretext</u>

Nevertheless, the purported non-discriminatory ground can still be discredited if a plaintiff demonstrates its pretextual character. Plaintiff can show that Defendant's "offered explanation is unworthy of credence." <u>Acevedo-Díaz v. Aponte</u>, 1 F.3d 62, 67 (1st Cir. 2011).  "The evidence by which the plaintiff establish her *prima facie* case may suffice for a fact-finder to infer that defendant's reason is pretextual and to effectively check summary judgment."  <u>Padilla-García</u>, 212 F.3d at 78.

Civil No. 14-1060 (GAG)

1    As established above, Plaintiffs have raised multiple issues of fact as to whether

2    Defendants' proffered legitimate reasons for the non-renewals of all transitory plaintiffs and the

3    dismissal of both career employees were in fact, pretextual.  First, as to the budgetary concerns,

4    many others were hired after Plaintiffs were let go off.  Additionally, many of the new employees

5    received salary increases, and the Municipality's budget increased by $500,000.   As to

6    Defendants' hiring practices, the evidence shows that Defendants did not renew Plaintiffs' term

7    appointments without consideration to any written evaluations, and relying only on verbal

8    advisements from the same mayor-supporters that he had just brought in to work at the

9    Municipality.  Additionally, some Plaintiffs testified that they never witnessed Defendant

10   Rodríguez-Díaz sitting next to each transitory employees and conducting said informal

11   evaluations.  For the most part, Defendants could not remember or admitted that they did not

12   review most of the transitory Plaintiffs' personnel files, or reviewed previous evaluations to

13   determine whether to renew their contracts.  While Defendants contend that vacancies were filled

14   with both PDP and NPP supporters alike, Plaintiffs provided evidence that a substantial number of

15   them were replaced with PDP-affiliated employees.  Lastly, Plaintiff Sanchez-Rivera provided

16   evidence of direct discrimination on behalf of Defendant Torres-Torres when the mayor told him

17   he would not review his appointment because Sánchez-Rivera had previously campaigned against

18   Defendant Torres-Torres.

19   Additionally, Plaintiffs' evidence also raises issues of fact as to the legitimacy of firing the

20   career Plaintiffs.   Specifically, Plaintiffs evidence raised questions as to the legitimacy of the

21   charges and the reasons behind them.   Plaintiffs included evidence to show that the charged

22   conduct could have been remedied with lighter punishment, rather than termination.   Because

23   issues of fact remain as to Defendants' motives behind Plaintiffs' non-renewal and firing of career

Civil No. 14-1060 (GAG)

employees, Defendant's motion for summary judgment as to Plaintiff's political discrimination claim is **DENIED**.

     C.  <u>Personal Liability</u>

Defendant requests summary judgment for all claims against co-Defendants Rodríguez-Albino, Rodríguez-Díaz, and Rodríguez-Barreto in their personal capacity, arguing that Plaintiffs failed to establish individual liability under Section 1983.  (Docket No. 98 at 7-11.)  Because as established above, Plaintiffs have raised genuine issues of material fact as to whether their First Amendment rights were violated, the Court will now focus on whether these co-Defendants caused that violation.

Section 1983 "affords redress against a person who, [acting] under color of state law, deprives another person of any federal constitutional or statutory right." <u>Medina-Medina v. P.R.</u>, 769 F. Supp. 2d 77, 82 (D.P.R. 2011); <u>see</u> <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 816 (1985)). Section 1983 does not create "independent substantive right, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." <u>Cruz-Erazo v. Rivera-Montañez</u>, 212 F.3d 617, 621 (1st Cir. 2000).  Individual liability under Section 1983 must be premised on each official's own acts or omissions. <u>See</u> <u>Gutierrez-Rodríguez v. Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989); <u>Figueroa v. Aponte-Roque</u>, 864 F.2d 947, 953 (1st Cir. 1989).

To prevail, Plaintiffs "must plead and prove three elements: (1) that the defendant acted under color of state law; (2) that the plaintiff was deprived of federally protected rights, privileges, or immunities; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation." <u>See</u> <u>Vizcarrondo v. Bd. of Tr. Univ. of P.R.</u>, 139 F. Supp. 2d 198, 206 (D.P.R. 2001) (internal citations omitted).  To establish causation mere negligence will not suffice:

Civil No. 14-1060 (GAG)

the official's conduct must evince encouragement, condonation, acceptance or "reckless or callous indifference to the constitutional rights of others."   Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 92 (1st Cir. 1994).

"[O]fficials may be held liable if the plaintiff can establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization . . . ." Rodríguez-García v. Miranda-Marin, 610 F.3d 756, 768 (1st Cir. 2010) (internal quotation marks and citation omitted).  A plaintiff can either show that the particular defendant personally participated in the deprivation of his or her rights, or can indirectly show that defendant "set[ ] in motion a series of acts by others which the actor knows or reasonably should know would cause other to inflict the constitutional injury." Sanchez v. Pereira-Castillo, 590 F.3d 31, 51 (1st Cir. 2009) (quoting Gutierrez-Rodríguez, 882 F.2d at 561); see also Penalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594-95 (1st Cir. 2011) (holding a named Defendant could be someone that "participated—either as [a] perpetrator[ ] or [an] accomplice [ ]—in the decision to dismiss [Plaintiffs].").

Defendants maintain Plaintiffs have failed to come forth with any evidence that these three co-Defendants were responsible for the constitutional violations alleged in this case.[9]  (Docket No. 98 at 11.)  Plaintiffs counter that these co-Defendants were in one way or another "deeply" involved in the non-renewals of transitory employees, and the firing of both career employees. (Docket No. 110 at 43.)  Related to the transitory employees' non-renewals, Rodríguez-Albino ordered the drafting of the letters given to all of the transitory employees notifying them that their

_____

[9] Specifically as to Rodríguez-Díaz, Defendants also move for summary judgment on all claims by all eleven transitory employees whose contracts expired on or before April 30, 2013.  (Docket No. 98 at 11-12.)  Because Defendant Rodríguez-Díaz did not become the HR Director until June 5, 2013, Defendants argue it is impossible that he would have participated in the non-renewals of these employees' contracts.  Id.  Plaintiffs admit that those employees have no claims against co-Defendant Rodríguez-Díaz.  (Docket No. 106 ¶¶ 3-10, 12-15.)  Rodríguez-Díaz is not personally liable for those claims.

Civil No. 14-1060 (GAG)

appointment would soon expire.   Additionally, specifically as to Plaintiff Martínez-Matos, Rodríguez-Albino recommended a PDP supporter for his substitution.   Rodríguez-Díaz was also one of the supervisors involved in the non-renewals of Plaintiffs Moreno-Berríos and Rivera-Díaz because he conducted evaluations and based on performance recommended not to renew their appointments.   Lastly, Rodríguez-Barreto was involved in the non renewals of Plaintiffs Alicea-Guzmán, and Negrón-Martínez, by making assessments of these employees and giving Defendant Torres-Torres recommendations as to whose contracts to renew.   Plaintiffs provided evidence that he did so without reviewing personnel files or previous evaluations.   Further, as to the career Plaintiffs, Plaintiffs presented evidence that both Rodríguez-Díaz and Rodríguez-Barreto aided Defendant Torres-Torres in charging both Beltrán-Rodríguez and Vázquez-Nieves with the allegedly false charges that led to their ultimate dismissal.   Rodríguez-Díaz also lied about conducting adequate performance evaluations.

Thus, Plaintiffs have affirmatively raised genuine issues of material facts as to whether these three co-Defendants knew of or were the moving force behind the non-renewals and firing of career employees by Defendant Torres-Torres as the nominating authority.   The evidence Plaintiffs presented shows genuine issues of fact as to whether Defendants' actions made them accomplices or set in motion what would lead to the eventual constitutional injury.   As such, the Court **DENIES** summary judgment on this claim.

D.   State Law Claims

The Constitution of Puerto Rico gives Plaintiffs the same Due Process rights as the U.S. Constitution.   See Nazario v. Dept. of Health of Cmmw. of P.R., 415 F. Supp. 2d 48, 49 n. 2 (D.P.R. 2006) ("A reading of [Puerto Rico Supreme Court decisions on Due Process] reveals that, insofar as Due Process is concerned, both state and federal constitutions afford an individual the

Civil No. 14-1060 (GAG)

same protections against actions by the State. More so, the Puerto Rico Supreme Court's analysis of Due Process in its opinions revolves around leading United States Supreme Court decisions on said matter.").

Because this Court has decided to **GRANT** Defendants' motion for summary judgment as to Plaintiffs' federal Due Process claim, Plaintiffs' supplemental state law claim under Article II, Section 7 of the Constitution of Puerto Rico, is also **DISMISSED** with prejudice.

However, given that Plaintiffs' political discrimination claim survived Defendants' motion for summary judgment, the court **DENIES** Defendants' motion for summary judgment as to the remaining state law claims.[10]

## V.    Conclusion

For the reasons stated herein, the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment.    (Docket No. 98.)  The Court **GRANTS** summary judgment as to any claims against Defendant Frances Marrero-Rodríguez.  The Court **GRANTS** Defendants' motion for summary judgment in regards to Plaintiffs' claim under the Due Process Clause of the Fourteenth Amendment, and Article II, Section 7 of the Constitution of Puerto Rico.

The Court **DENIES** Defendants' motion for summary judgment in regards to Plaintiffs' claims under the First Amendment, including the personal liability claims against co-Defendants Rodríguez-Albino, Rodríguez-Díaz, Marrero-Rodríguez, and state law claims alleging violations of Article II, Section 1, 2, 4, and 6, and Articles 1802 and 1803 of the Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141 and 5142.

---

[10] Defendants move for summary judgment on Plaintiffs' Article 1802 claim, arguing that because Section 1983 already covers the conduct complained of here, the tort claims under state law do not stand.  See Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994) (holding Article 1802 claims only survive where the conduct alleged of is based on tortious or negligent conduct different from the conduct covered by other specific labor laws involved).  As in their motion for judgment on the pleadings, Defendants once again fail to cite any cases that include Section 1982 as a "specific labor law" that bars an Article 1802 claim.  Plaintiffs here do not allege causes of actions under any other Puerto Rico labor laws, thus, their Article 1802 claim survives.

Civil No. 14-1060 (GAG)

This case is hereby referred to Magistrate Judge Camille Vélez-Rivé for the holding of a pre-trial/settlement conference.  The parties shall file a joint, proposed pre-trial order on or before August 1, 2016.

### THE COURT HIGHLY ENCOURAGES SETTLEMENT OF THIS MATTER.

**SO ORDERED.**

In San Juan, Puerto Rico this 1st day of July, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge